UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ARTHUR GRICE,

        Petitioner,

        Case No. 1:24-cv-1200

v.

        Honorable Paul L. Maloney

JACOB LAFAVE,

        Respondent.
_____/

## OPINION

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Arthur Grice is incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. On March 10, 2023, following a jury trial in the Berrien County Circuit Court, Petitioner was convicted of one count of resisting and obstructing an officer, in violation of Mich. Comp. Laws § 750.81d. On May 22, 2023, the trial court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to 3 to 15 years of imprisonment.

      On November 12, 2024, Petitioner filed his habeas corpus petition, raising the following sole ground for relief:

> I.    Ineffective Assistance of Trial Counsel. Counsel failed to object to the amendment of the information to charge a new offense on the day of trial, and counsel failed to produce defense witnesses or present a defense.

(§ 2254 Pet., ECF No. 1, PageID.5.) Respondent contends that Petitioner's ground for relief lacks merit. (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has failed to set

forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.  Factual Allegations

The record before the Court reflects that on September 15, 2022, Petitioner appeared before the Berrien County Circuit Court and was arraigned on two counts of assault of a prison employee based upon incidents that occurred at the Berrien County Jail. (ECF No. 8-2, PageID.95.) Petitioner appeared before the trial court for a preliminary hearing on September 29, 2022. (ECF No. 8-4.) Based upon the testimony provided, the prosecution moved for Petitioner to be bound over as charged, and also moved for Petitioner to be bound over on two identical counts of assault of a prison employee for "the assaults of Deputy Hairston and Officer Bowman." (*Id.*, PageID.136.) The trial court found probable cause to bind Petitioner over on all four felony counts. (*Id.*, PageID.140.)

Jury selection for Petitioner's trial occurred on March 9, 2023. (Trial Tr. I, ECF No. 8-8.) That day, the jury heard testimony from Berrien County Jail employees Yuji Hariston, Jr., Kendra Warman, and Brittany Starkey. (*Id.*) The record reflects that prior to jury selection, the prosecution moved for the third count, which related to Officer Bowman, to be dismissed. (*Id.*, PageID.158.) The prosecution also moved to amend count four, which related to Deputy Hairston, to a resisting and obstructing charge, which took the maximum penalty from five years to two years. (*Id.*, PageID.158–59.) Petitioner's attorney did not object. (*Id.*, PageID.159.) The next day, the jury returned a guilty verdict as to count three, charging Petitioner with resisting and obstructing. (Trial Tr. II, ECF No. 8-9, PageID.399.) The jury indicated that it was hung on the other two counts. (*Id.*) The trial court declared a mistrial as to those two counts. (*Id.*, PageID.403.) Petitioner appeared

2

before the trial court for sentencing on May 22, 2023. (ECF No. 8-10.) The record reflects that the trial court entered an amended judgment of sentence on July 20, 2023, to reflect the proper amount of jail credit due to Petitioner. (ECF No. 8-13, PageID.441.)

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. However, his appeal was dismissed for lack of jurisdiction. (ECF No. 8-13, PageID.427.) The court of appeals' order stated:

> The claim of appeal is DISMISSED for lack of jurisdiction. The May 22, 2023 judgment of sentence is "the original sentence imposed following conviction." MCR 7.202(6)(b)(ii); MCR 7.203(A)(l). However, the claim of appeal was not timely filed from that judgment. MCR 7.204(A)(2). And, although the claim of appeal was timely filed from the July 20, 2023 judgment of sentence, that judgment of sentence is not a final judgment appealable by right. MCR 7.202(6)(b); MCR 7.203(A)(l). Dismissal is without prejudice to whatever other relief may be available consistent with the Court Rules.

(*Id.*)

Petitioner, through counsel, subsequently filed an application for delayed leave to appeal to the Michigan Court of Appeals. (ECF No. 8-15, PageID.489.) In the application for leave to appeal, Petitioner argued that: (1) counsel was ineffective for failing to object to the amendment of the information and for failing to produce defense witnesses or present a defense; and (2) the trial court imposed a disproportionate and unreasonable sentence. (*Id.*, PageID.490.) In an order entered on April 15, 2024, the court of appeals denied Petitioner's application "for lack of merit in the grounds presented." (ECF No. 8-15, PageID.488; ECF No. 8-14, PageID.449.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on October 28, 2024. (ECF No. 8-14, PageID.442.) This § 2254 petition followed.

3

## II. AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in

light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits." *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.  Discussion

As set forth above, Petitioner's sole ground for relief is that counsel failed to object to the amendment of the information to charge a new offense on the day of trial, and that counsel failed to produce defense witnesses or present a defense. (§ 2254 Pet., ECF No. 1, PageID.5.)

#### A.  Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance

6

fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

7

prevailing on a *Strickland* claim in the context of habeas and AEDPA" (citing *Harrington*, 562 U.S. at 102)).

As set forth above, Petitioner raised his ineffective assistance claims on direct appeal, and the Michigan Court of Appeals denied his application for delayed appeal "for lack of merit in the grounds presented." (ECF No. 8-15, PageID.488; ECF No. 8-14, PageID.449.) Although the court of appeals issued a summary order denying Petitioner's application for leave to appeal, and the Michigan Supreme Court issued a summary order denying Petitioner's *pro per* application for leave to appeal, those orders are deemed decisions on the merits of Petitioner's claims that are entitled to AEDPA deference. *See Harrington*, 562 U.S. at 99; *see also Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

### B.    Failure to Object to Amendment of Charge

Petitioner first faults counsel for "fail[ing] to object to the amendment of the information to charge a new defense on the day of trial." (§ 2254 Pet., ECF No. 1, PageID.5.)

The Michigan Court Rules provide that a "court before, during, or after trial may permit the prosecutor to amend the information . . . unless the proposed amendment would unfairly surprise or prejudice the defendant." *See* Mich. Ct. R. 6.112(H). "The trial court may allow the prosecution to amend the complaint to include a new charge if amendment would not cause 'unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend.'" *People v. Carlton*, 880 N.W.2d 803, 810 (2015) (quoting *People v. Hunt*, 501 N.W.2d 151, 154 (Mich. 1993)). "The fact that the new charge might carry a more severe penalty is not a sufficient basis to conclude that [the defendant] would be unacceptably

8

prejudiced." *Id.* at 811. Instead, "the relevant inquiry is whether [the defendant] would have a fair opportunity to meet the charges against him." *Id.*

As noted *supra*, Petitioner was initially charged with four counts of assault of a prison employee, in violation of Mich. Comp. Laws § 750.197c. That statute provides:

> A person lawfully imprisoned in a jail, other place of confinement established by law for any term, or lawfully imprisoned for any purpose at any other place, including, but not limited to, hospitals and other health care facilities or awaiting examination, trial, arraignment, sentence, or after sentence awaiting or during transfer to or from a prison, for a crime or offense, or charged with a crime or offense who, without being discharged from the place of confinement, or other lawful imprisonment by due process of law, through the use of violence, threats of violence or dangerous weapons, assaults an employee of the place of confinement or other custodian knowing the person to be an employee or custodian or breaks the place of confinement and escapes, or breaks the place of confinement although an escape is not actually made, is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $2,500.00, or both.

Mich. Comp. Laws § 750.197c(1). The record reflects that prior to jury selection, the prosecution moved for the third count, which related to Officer Bowman, to be dismissed. (Trial Tr. I, ECF No. 8-8, PageID.158.) The prosecution also moved to amend count four, which related to Deputy Hairston, to a resisting and obstructing charge, which took the maximum penalty from five years to two years. (*Id.*, PageID.158–59.) The prosecution amended count four to charge Petitioner under Mich. Comp. Laws § 750.81d, which provides:

> Except as provided in subsections (2), (3), and (4), an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

Mich. Comp. Laws § 750.81d(1). The trial court indicated the amendment would benefit Petitioner, and Petitioner's counsel did not object to the amendment. (Trial Tr. I, ECF No. 8-8, PageID.159.)

On direct appeal, Petitioner's appellate counsel argued that trial counsel was ineffective for failing to challenge the amendment of the information. (ECF No. 8-15, PageID.498.) Appellate counsel argued that the amendment "caused prejudice because it would involve a different defense." (*Id.*, PageID.499.) By summarily denying Petitioner's applications for leave to appeal, the state appellate courts disagreed with Petitioner's argument.

The Michigan Court of Appeals has noted that

> under MCL 750.81d(1), the elements required to establish criminal liability are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.

*People v. Corr*, 788 N.W.2d 860, 863 (Mich. Ct. App. 2010). "Obstruct" includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Mich. Comp. Laws § 750.81d(7)(a). The Michigan Court of Appeals has noted that § 750.81d(1) may extend to resisting and obstructing a sheriff's deputy performing his or her duties at a county jail. *See People v. Walker*, No. 352325, 2021 WL 2181071, at *4 (Mich. Ct. App. May 27, 2021). A conviction for assaulting a prison employee, in violation of Mich. Comp. Laws § 750.197c, requires "proof that the defendant (1) was lawfully imprisoned in a place of confinement, (2) used violence, threats of violence, or dangerous weapons to assault an employee of the place of confinement or other custodian, and (3) knew that the victim was an employee or custodian." *People v. Kammeraad*, 858 N.W.2d 490, 517 (Mich. Ct. App. 2014). As the *Kammeraad* court summarized:

> Accordingly, assault of a prison employee contains elements not included in resisting or obstructing, e.g., that the defendant was lawfully imprisoned in a place of confinement. Moreover, resisting or obstructing contains an element not necessarily included in assault of a prison employee; namely, that the victim is a police officer.

*Id.*

Here, Petitioner fails to describe, and the Court fails to discern, how the state courts' rejection of this assertion of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, *Strickland*. Petitioner fails to allege how trial counsel should have argued that the amendment of the information on the day of trial unfairly surprised him or prejudiced his defense. Although Petitioner argued on direct appeal that the amendment caused prejudice because "it would involve a difference defense," he failed to explain just what the defense would have been, and he fails to rectify that omission in these federal habeas corpus proceedings. As the *Kammeraad* court noted, the only element that essentially differs between § 750.197c and § 750.81d(1) is that § 750.81d(1) "contains an element not necessarily included in assault of a prison employee; namely, that the victim is a police officer." *Kammeraad*, 858 N.W.2d at 517. Here, however, there was no question that the sheriff's deputies employed at the Berrien County Jail qualified as police officers for purposes of § 750.81d(1). *See Walker*, 2021 WL 2181071, at *4.

Moreover, the trial court correctly noted that Petitioner substantially benefited from the amendment of the information on the day of trial. As set forth above, each count of assault of a prison employee carried a maximum punishment of five years' incarceration. However, because of Petitioner's status as a fourth-offense habitual offender, a conviction on any one of those charges would have caused him to face a maximum of life imprisonment. *See* Mich. Comp. Laws § 769.12(1)(b). On the other hand, because resisting and obstructing carries only a maximum punishment of two years' incarceration, Petitioner's status as a fourth-offense habitual offender meant that he faced only a maximum of 15 years' imprisonment upon conviction of that charge. *See id.* § 769.12(1)(c).

In sum, there was no basis for trial counsel to argue that the amendment of the information on the day of trial unfairly surprised or prejudiced Petitioner's defense. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner, therefore, has failed to demonstrate that the state courts' rejection of this assertion of ineffective assistance of counsel was contrary to, or an unreasonable application of, *Strickland*, and so he is not entitled to federal habeas relief with respect to this portion of his sole ground for relief.

### C.  Failure to Present a Defense

Petitioner also faults trial counsel for failing to "produce defense witnesses or present a defense." (§ 2254 Pet., ECF No. 1, PageID.5.) The record reflects that prior to jury selection, and after the amendment of count three, Petitioner stated the following to the trial judge:

> I haven't been, for one I haven't had a Discovery packet for this case. I was going through another trial and after that trial Mr. Mackin [hasn't come] and spoke[n] to me about this case at all. So, I don't, I have witnesses that I wanted to come testify for me and, and I don't—we never discussed any of that.

(Trial Tr. I, ECF No. 8-8, PageID.160.) Petitioner also mentioned that he "[had] a right to have whoever [he] wanted to come testify for [him]." (*Id.*, PageID.161.) The trial judge said that Petitioner could "discuss that with Mr. Mackin." (*Id.*)

Subsequently, at sentencing, Petitioner raised the fact that he "had officers that [were] willing to come to court on [his] behalf and tell them that [Petitioner] was withdrawing through that, through that process and they weren't even supposed to be messing with [Petitioner]." (ECF No. 8-10, PageID.418.) Petitioner argued that counsel failed to subpoena the officers to appear on

12

Petitioner's behalf. (*Id.*) When asked by the court what he was withdrawing from, Petitioner indicated that he was withdrawing from alcohol at the time of the incident. (*Id.*, PageID.420.)

On appeal, Petitioner, through appellate counsel, challenged trial counsel's failure to present defense witnesses who could testify regarding Petitioner's state of mind at the time of the incident. (ECF No. 8-15, PageID.500.) In support of that assertion, appellate counsel stated that Petitioner's "defense was that he was withdrawing from alcohol at the time of the incident and seeking medical treatment, and that his state of mind was relevant to his capacity to obey lawful orders." (*Id.*) Appellate counsel attached to the application for leave to appeal a letter from Berrien County Sheriff's Deputy Culbertson, dated June 7, 2023, stating:

> On 3/09/2023, Arthur Earl Grice stood trial for docket number 2022002898 in the Berrien County Circuit Court. Prior to going to trial, Mr. Grice asked me to testify to his state of mind during the events which transpired, which led to him receiving charges. I agreed to do so. Mr. Grice believed my testimony could have a significant impact on the outcome of his case. According to Mr. Grice, he told his attorney I was willing to testify. I never received any subpoena, or spoke with anyone in regards to testifying. I was never contacted by Mr. Grice's attorney, or by anyone else regarding this case.

(*Id.*, PageID.506.)

Although the court of appeals and supreme court denied Petitioner's applications for leave to appeal in summary orders, as noted above, those orders are deemed decisions on the merits that are entitled to AEDPA deference. Although Petitioner appears to fault trial counsel for not calling Deputy Culbertson as a witness at trial, "whether to call a witness and how to conduct a witness[']s testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). Here, although Deputy Culbertson stated in his letter that he would have testified on Petitioner's behalf as to Petitioner's state of mind at the time of the incident, nowhere in the record is there any suggestion of what, exactly, the content of

13

Deputy Culbertson's testimony would have entailed. Petitioner essentially relies only on his own speculation that Deputy Culbertson would have provided testimony that Petitioner was withdrawing from alcohol and therefore was unable to obey orders given by Berrien County Jail staff at the time. That speculation alone is insufficient to establish that counsel was ineffective. *See Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said"); *United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted).

Petitioner's contention that counsel should have presented evidence that Petitioner was withdrawing from alcohol at the time of the incident is essentially an argument that counsel should have presented a diminished capacity defense at trial. However, Michigan state law explicitly provides that, generally, "it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor, drug, including a controlled substance, other substance or compound, or combination of alcoholic liquor, drug, or other substance or compound."[1] *See* Mich. Comp. Laws § 768.37(1). Furthermore, "[a]n

---

[1] Michigan law does provide that

> [i]t is an affirmative defense to a specific intent crime, for which the defendant has the burden of proof by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired.

individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances." *See* Mich. Comp. Laws § 768.21a(2).

In 2001, the Michigan Supreme Court noted that "the so-called 'diminished capacity defense allows a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime." *People v. Carpenter*, 627 N.W.2d 276, 280 (Mich. 2001). The *Carpenter* court noted, however, that it had "never specifically authorized . . . use [of the diminished capacity defense] in Michigan courts." *Id.* at 281. Ultimately, the supreme court stated, the "Legislature's enactment of a comprehensive statutory scheme concerning defenses based on either mental illness or mental retardation demonstrate[d] the Legislature's intent to preclude the use of *any* evidence of a defendant's lack of mental capacity short of legal insanity to avoid or reduce criminal responsibility by negating specific intent." *Id.* at 282. In short, the *Carpenter* court wrote:

> We need not join the affray because we agree with the prosecution that our Legislature, by enacting the comprehensive statutory framework described above, has already conclusively determined when mental incapacity can serve as a basis for relieving one from criminal responsibility. We conclude that, through this framework, the Legislature has created an all or nothing insanity defense. Central to our holding is the fact that the Legislature has already contemplated and addressed situations involving persons who are mentally ill or retarded yet not legally insane. As noted above, such a person may be found "guilty but mentally ill" and must be sentenced in the same manner as any other defendant committing the same offense and subject to psychiatric evaluation and treatment. MCL 768.36(3). Through this statutory provision, the Legislature has demonstrated its

---

*See* Mich. Comp. Laws § 768.37(2). Here, however, there is no suggestion that Petitioner used alcohol not knowing or reasonably knowing that he would become intoxicated. In any event, § 750.81d is a general intent crime such that § 768.37(2) would not apply. *See People v. Anglemyer*, No. 368620, 2025 WL 814769, at *3 (Mich. Ct. App. Mar. 13, 2025).

> policy choice that evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent.

*Id.* at 283.

Thus, from the foregoing, any attempt by trial counsel to assert a diminished capacity defense based upon Petitioner's withdrawal from alcohol would have been legally precluded. As previously noted, "omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752; *see also Mahdi*, 522 F.3d at 638. Furthermore, Petitioner has not demonstrated that any testimony from Deputy Culbertson regarding Petitioner's state of mind at the time of the incident would have resulted in a different outcome, particularly given testimony from all three officers who testified regarding Petitioner's aggressive behavior throughout the incident. For example, Deputy Starkey testified that after she directed Petitioner to remove his hands from the food slot, Petitioner responded, "make me bitch." (Trial Tr. I, ECF No. 8-8, PageID.346.) Deputy Starkey testified further that Petitioner was "very angry, yelling, cursing." (*Id.*)

Based upon the foregoing, Petitioner has not demonstrated that the state courts' rejection of this assertion of ineffective assistance of trial counsel was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to federal habeas relief with respect to this portion of his sole ground for relief.

### D.     Summary

For the reasons discussed above, counsel was not ineffective for not objecting to the amendment of the information on the day trial started nor for failing to attempt to present a diminished capacity defense regarding Petitioner's withdrawal from alcohol at the time of the

incident. Petitioner, therefore, is not entitled to federal habeas relief, and his federal habeas petition will be denied.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claim was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a

constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.

Dated:   July 14, 2025                                /s/ Paul L. Maloney
                                                                                        Paul L. Maloney
                                                                                        United States District Judge